IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| LUU Q. LE, § | |
| § | |
| Plaintiff, § | |
| § | |
| V. § | CIVIL ACTION NO. H-06-0425 |
| § | |
| MICHAEL J. ASTRUE, § | |
| COMMISSIONER OF THE SOCIAL § | |
| SECURITY ADMINISTRATION, § | |
| § | |
| Defendant. § | |

**MEMORANDUM AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

Before the Court[1] in this social security appeal is Plaintiff's Motion for Summary Judgment (Document No. 11) and Defendant's cross Motion for Summary Judgment (Document No. 13). Having considered the cross motions for summary judgment, the administrative record, and the applicable law, the Court ORDERS, for the reasons set forth below, that Plaintiff's Motion for Summary Judgment is GRANTED, Defendant's Motion for Summary Judgment is DENIED, and the decision of the Commissioner of the Social Security Administration is REVERSED and REMANDED for further findings.

**I.     Introduction**

Plaintiff Luu Q. Le ("Le") brings this action pursuant to Section 205(g) of the Social Security Act ("Act"), 42 U.S.C. § 405(g), seeking judicial review of an adverse final decision of the

---

[1] On May 1, 2006, pursuant to the parties' consent, this case was transferred by the District Judge to the undersigned Magistrate Judge for all further proceedings. *See* Document Nos. 7, 9.

Commissioner of the Social Security Administration ("Commissioner") denying his application for disability insurance benefits. Le contends that Administrative Law Judge's ("ALJ") decision is flawed because the ALJ: (1) found that Le has a "severe" impairment, which includes some problems with the left hand such as making a fist, but failed to articulate any limitation in work related function due to those problems; (2) found a "severe" mental impairment, i.e. Depressive Disorder, but failed to articulate a single basic work-related functional limitation resulting from the disorder; and (3) failed to follow the legal standard in assessing a mental medically determinable impairment. The Commissioner, in contrast, contends that there is substantial evidence in the record to support the ALJ's decision, that the decision comports with applicable law, and that any deficiencies in the ALJ's written decision constitute harmless error.

## II.     Administrative Proceedings

On December 4, 2002, Le applied for disability insurance benefits claiming an inability to work, since September 12, 2000, as a result of back pain and depression. (Tr. 59). The Social Security Administration denied his application at the initial and reconsideration stages. After that, Le requested a hearing before an ALJ. The Social Security Administration granted his request and the ALJ, Lantz McClain, held a hearing on September 14, 2004, at which Le's claims were considered *de novo*. (Tr. 302-330). On October 6, 2004, the ALJ issued a decision finding Le not disabled. (Tr. 18-24).

Le sought review of the ALJ's adverse decision with the Appeals Council. The Appeals Council will grant a request to review an ALJ's decision if any of the following circumstances are present: (1) it appears that the ALJ abused his discretion; (2) the ALJ made an error of law in reaching his conclusion; (3) substantial evidence does not support the ALJ's actions, findings or

conclusions; or (4) a broad policy issue may affect the public interest. 20 C.F.R. § 404.970; 20 C.F.R. § 416.1470. After considering Le's contentions in light of the applicable regulations and evidence, the Appeals Council concluded, on January 10, 2006, that there was no basis upon which to grant Le's request for review. (Tr. 6-8). The ALJ's findings and decision thus became final.

Le has filed a timely appeal of the ALJ's decision. Both Le and the Commissioner have filed Motions for Summary Judgment (Document Nos. 11 & 13). This appeal is now ripe for ruling.

### III.  Standard for Review of Agency Decision

The court's review of a denial of disability benefits is limited "to determining (1) whether substantial evidence supports the Commissioner's decision, and (2) whether the Commissioner's decision comports with relevant legal standards." *Jones v. Apfel*, 174 F.3d 692, 693 (5th Cir. 1999). Indeed, Title 42, Section 405(g) limits judicial review of the Commissioner's decision: "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." The Act specifically grants the district court the power to enter judgment, upon the pleadings and transcript, "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing" when not supported by substantial evidence. 42 U.S.C. § 405(g). While it is incumbent upon the court to examine the record in its entirety to decide whether the decision is supportable, *Simmons v. Harris*, 602 F.2d 1233, 1236 (5th Cir. 1979), the court may not "reweigh the evidence in the record, nor try the issues de novo, nor substitute [its] judgment for that of the [Commissioner] even if the evidence preponderates against the [Commissioner's] decision." *Johnson v. Bowen*, 864 F.2d 340, 343 (5th Cir. 1988); *see also Jones*, 174 F.3d at 693; *Cook v. Heckler*, 750 F.2d 391, 392-93 (5th Cir. 1985). Conflicts in the

evidence are for the Commissioner to resolve. *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992).

The United States Supreme Court has defined "substantial evidence," as used in the Act, to be "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co., v. N.L.R.B.,* 305 U.S. 197, 229 (1938)). Substantial evidence is "more than a scintilla and less than a preponderance." *Spellman v. Shalala,* 1 F.3d 357, 360 (5th Cir. 1993). The evidence must create more than "a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a `conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

## IV.   Burden of Proof

An individual claiming entitlement to disability insurance benefits under the Act has the burden of proving his disability. *Johnson,* 864 F.2d at 344. The Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must be proven through medically accepted clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). The impairment must be so severe as to limit the claimant in the following manner:

> he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied to work.

42 U.S.C. § 423(d)(2)(A).  The mere presence of an impairment is not enough to establish that one is suffering from a disability.  Rather, a claimant is disabled only if he is "incapable of engaging in any substantial gainful activity." *Anthony*, 954 F.2d at 293 (quoting *Milam v. Bowen,* 782 F.2d 1284, 1286 (5th Cir. 1986)).

> The Commissioner applies a five-step sequential process to decide disability status:
>
> 1. If the claimant is presently working, a finding of "not disabled" must be made;
>
> 2. If the claimant does not have a "severe impairment" or combination of impairments, [he] will not be found disabled;
>
> 3. If the claimant has an impairment that meets or equals an impairment listed in Appendix 1 of the Regulations, disability is presumed and benefits are awarded;
>
> 4. If the claimant is capable of performing past relevant work, a finding of "not disabled" must be made; and
>
> 5. If the claimant's impairment prevents [him] from doing any other substantial gainful activity, taking into consideration [his] age, education, past work experience and residual functional capacity, [he] will be found disabled.

*Anthony,* 954 F.2d at 293; *see also Leggett v. Chater,* 67 F.3d 558, 563 n.2 (5th Cir. 1995); *Wren v. Sullivan,* 925 F.2d 123, 125 (5th Cir. 1991).  Under this formula, the claimant bears the burden of proof on the first four steps of the analysis to establish that a disability exists.  *McQueen v. Apfel,* 168 F.3d 152, 154 (5th Cir. 1999).  If successful, the burden shifts to the Commissioner, at step five, to show that the claimant can perform other work.  *Id.*  Once the Commissioner shows that other jobs are available, the burden shifts, again, to the claimant to rebut this finding.  *Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990).  If, at any step in the process, the Commissioner determines that the claimant is or is not disabled, the evaluation ends.  *Leggett,* 67 F.3d at 564.

Here, the ALJ found at step five that although Le's exertional limitations do not allow him to perform a full range of light work, there are a significant number of jobs in the national economy that he could perform, and that Le was not therefore disabled within the meaning of the Act. In this appeal, the Court must determine whether substantial evidence supports that step five finding, and whether the ALJ used the correct legal standards in arriving at that conclusion, including, whether the ALJ properly considered all of Le's physical and mental impairments and the effect those impairments have on Le's ability to perform work-related functions.

In determining whether substantial evidence supports the ALJ's decision, the court weighs four factors: (1) the objective medical facts; (2) the diagnosis and expert opinions of treating physicians on subsidiary questions of fact; (3) subjective evidence of pain as testified to by the plaintiff and corroborated by family and neighbors; and (4) the plaintiff's educational background, work history and present age. *Wren,* 925 F.2d at 126.

### V. Discussion

**A. Objective Medical Facts**

The medical records show that Le suffers from a depressive disorder, pain from a spine injury, and residual pain from a Baker's cyst removal on his left knee. The records also show that Le experiences some problems with his left hand. However, the main focus of Le's complaints in the medical records is directed toward his back pain and depression.

Although there is evidence of a previous injury, Le's back problems primarily stem from a workplace accident. On September 12, 2000, Le was working on a loading dock where he sustained a fall from the back end of a truck. That same day Le was examined at Herman Hospital and given a CT scan of the thoracic spine with sagittal and coronal reconstructions. (Tr. 104-111). No acute

fractures or dislocations were found. (Tr. 110). An old healed compression fracture of T12 was identified, which was consistent with a previous injury, and an osteophyte formation was also identified at T10 and T11. (Tr. 110). Le was prescribed Vicodin and Celebrex and was released. (Tr. 112).

On September 18, 2000, while under the care of Dr. Treit Huynh, Le began treatment at the Houston Injury Rehabilitation Clinic, where he underwent approximately 8 weeks of physical therapy. (Tr. 132, 147). Le experienced slow gains in his condition and reported still having a moderate amount of discomfort. (Tr. 116-118, 121-132, 151-152). On November 18, 2000, an MRI revealed a chronic anterior wedge compression fracture of T12, and facet arthrosis. (Tr. 145). After only seeing the small gains from therapy, Dr. Huynh determined that Le should undergo facet joint injections of corticosteroid anesthetics to reduce inflamation and decrease pain. (Tr. 151).

On January 2, 2001, Le was seen by Dr. Martin Steiner for a neurological examination. (Tr. 119). Dr. Steiner reviewed Le's records including his CT scan, MRI, and current pain medications. (Tr. 119-120). He concluded that Le sustained "nothing more than a contusion of the lower thoracic and upper lumbar back region when he fell off a trailer" and that this type of injury "would be expected to resolve itself in four to six weeks." (Tr. 120). Dr. Steiner's findings suggest that Le's anterior wedge compression fracture and facet arthrosis derived from an injury sustained years earlier than the September 2000 incident, and that Le had been able to continue working despite that injury.

On April 1, 2001, Le was examined by Dr. David Vanderweide at the request of Dr. Huynh. Dr. Vanderweide conducted a physical examination to determine Le's range of motion, and he also examined Le's medical history including Le's MRI and CT scans. (Tr. 134-136). Dr. Vanderweide concluded that: (1) Le suffered a contusion of the lumbar spine that neither aggravated nor

accelerated Le's previous injuries; (2) any symptoms related to the September 2000 injury have long since been resolved; (3) Le may need anti-inflammatory medications throughout the future, but this would be because of the facet arthrosis and not because of any chronic condition resulting from the injury; and (4) Le is fit to return to work on a light duty basis and will probably be fit for regular duty after some reconditioning. (Tr. 135).

Le was later referred to Dr. Son Nguyen, who examined him and determined that a series of diagnostic branch nerve blocks, and then possibly radio frequency thermocoagulation, would be the procedure to best give Le long-term pain relief from his lumbar facet syndrome. (Tr. 192). Under Dr. Nguyen's care, Le underwent at least 5 procedures that primarily consisted of delivering injections to localized areas in the spine in order to block any pain sensations. (Tr. 155, 161, 165, 171, 177). These treatments only provided temporary relief and Le's pain symptoms generally returned within a few months of the procedures. (Tr. 184, 188).

One of the more recent examinations was conducted by Dr. Aaron Levine on February 4, 2003. (Tr. 199). This examination was fairly extensive and attempted to address Le's complaints in regards to his back, knee, and left hand. Dr. Levine found that Le's spine showed vertebral tenderness over the lumbar vertebrae, but none at the facet joints. (Tr. 201). There were no muscle spasms, nor areas of muscle tenderness or trigger points. (Tr. 201). Dr. Levine concluded that Le's back pain was from a healed compression fracture, and although Le had facet arthrosis, it is uncertain whether he had facet arthritis pain. (Tr. 203).

When examining Le's left hand Dr. Levine found no evidence of intrinsic atrophy, and no contractures or clawing. (Tr. 200). Le did have some problems with terminal DIP flexion in making a fist, but his grasp strength was 50 pounds, and pinch strength was 10 pounds. (Tr. 200). In

contrast, Le's right hand grasp strength was 100 pounds, and pinch strength was 19 pounds. (Tr. 200).

The medical records also show that Le had a large Baker's cyst located on his left knee that was removed by Dr. Michael Dean on June 18, 1998. (Tr. 227, 230-231). Dr. Levine's examination of Le's left knee showed minimal effusion and retropatella tenderness. (Tr. 201). Otherwise, his left knee had no tenderness along various ligaments and no anterior or posterior cruciate instability. (Tr. 201). Dr. Levine stated that he believed Le had left patella pain syndrome. (Tr. 203). Le's right knee was normal. (Tr. 201).

The main medical evidence regarding Le's mental state comes from an examination conducted by Dr. Amina Abdulla on February 3, 2003. Dr. Abdulla observed that Le was preoccupied with his pain and financial situation. (Tr. 195). She noted that Le looked sad, but was well dressed, had good posture, and had a normal ability to relate. (Tr. 195). Also, Le was able to respond appropriately to a series of questions. (Tr. 195). Dr. Abdulla concluded that Le had a severe major depressive disorder which stems from his current unemployed situation as well as from the pain he had been experiencing. (Tr.196). She further concluded that the disorder has the potential of disrupting important areas of functioning in daily life. (Tr. 196).

Upon this record, the objective medical evidence factor weighs in favor of the ALJ's conclusion that Le is not disabled. With regards to Le's physical limitations, the objective medical evidence shows that Le has the residual functional capacity to perform light work.

Le argues in his motion for summary judgment that the ALJ erred because he found that Le had a severe left hand impairment, but failed to articulate limitations that result from that impairment. Le's argument goes as follows:

> A "severe" impairment significantly limits a person's ability to perform the physical or mental demands that are basic to all work. 20 CFR § 404.1521. Examples of physical functions common to all work include: walking, standing, sitting, lifting, pushing, pulling.... 20 CFR § 404.1521.
>
> Given the regulatory definition, the ALJ's finding that "Le's Problems with the left hand such as making a fist," necessarily, significantly affected the basic activities noted in the regulation, presumably carrying, reaching and/or handling.
>
> Thus, the ALJ's expressed RFC, which includes no mention of any work-related activity affected by this "severe" left hand impairment, presents a clear conflict in the ALJ's decision.

(Document No. 11 at 9-10). Le's argument is flawed. The ALJ did not find that the problems with Le's left hand, alone, constitutes a severe impairment. Rather the combination of the spine injury, left knee, left hand, and depressive disorder are considered severe.[2] It is clear from the record that the ALJ considered limitations caused by Le's left hand, and that he concluded that these limitations had, at best, only a slight impact on Le's functional capacity. (*See* Tr. 21).

Even if the court were to adopt Le's reasoning, his conclusion does not follow. Directly after discussing Le's physical limitations the ALJ cited the state agency physician's opinion that Le could do medium work, and Dr. Vanderweide's opinion that Le could return to work on a light-duty basis. (Tr. 205-211, 136). Accordingly, the ALJ concluded that Le retains the residual capacity to perform light work. This conclusion constitutes adequate consideration of a "work related activity affected by...[Le's] impairment." By definition, the ALJ is stating that Le's work activity is affected such that he can only perform work which requires lifting no more than 20 pounds at a time with the ability to frequently carry objects weighing 10 pounds. 20 CFR § 404.1567 (definition of light work).

Because the objective medical evidence, including that reflecting Le's limitations with respect to his left hand, supports the conclusion that Le is able to engage in substantial gainful

---

[2]A severe impairment can be a single or combination of impairments which significantly limits abilities to do basic work activities. 20 CFR § 404.1520.

activity, the objective medical evidence factor weighs in favor of the ALJ's decision that Le is not disabled.

### B. Diagnosis and Expert Opinions

The second element considered is the diagnosis and expert opinions of treating and examining physicians on subsidiary questions of fact. Unless good cause is shown to the contrary, "the opinion, diagnosis and medical evidence of the treating physician, especially when the consultation has been over a considerable length of time, should be accorded considerable weight." *Perez v. Schweiker,* 653 F.2d 997, 1001 (5th Cir. 1981). For the ALJ to give deference to a medical opinion, however, the opinion must be more than conclusory and must be supported by clinical and laboratory findings. *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985); *Oldham v. Schweiker*, 660 F.2d 1078 (5th Cir. 1981). Further, regardless of the opinions and diagnoses and medical sources, "`the ALJ has sole responsibility for determining a claimant's disability status.'" *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995).

In this case, there are multiple sources in the record with expert diagnoses showing that Le is physically able to engage in substantial gainful activity. (*See eg.* Tr. 205-211, 136). Dr. Nancy Tarrand testified at the administrative hearing as to the effects of Le's depressive disorder on his daily life. (Tr. 317-320). Dr. Tarrand concluded that Le had symptoms of depression which meet the A criteria of listing 12.04, but there was no evidence that he met the B criteria. (Tr. 318). She opined that Le would have moderate difficulties with work stress, no difficulty following simple or detailed instructions, but his ability to do complex instructions was possibly impacted. Further, because of his medication, she testified that he should not be around dangerous machinery or engage in commercial driving. (Tr. 319).

Le contends that the ALJ failed to articulate any limitation attributed to his depressive disorder because the ALJ stated that Le was limited in his ability to perform complex job instructions due to his difficulties with the English language. However, to the extent this was an error by the ALJ, it was harmless. The ALJ determined that Le was able to do light work and has the ability to carry out detailed and simple job instructions but not complex job instructions. (Tr. 23). Whether this limitation is because of limited English, or because of a depressive disorder, it was taken into account when determining Le's RFC.

Le also takes issue with the ALJ's failure to discuss the dangerous machinery or commercial driving limitations expressed by Dr. Tarrand. According to Le, the ALJ erred by disregarding these two limitations when determining his RFC and by failing to incorporate those limitations in the hypothetical posed to the vocational expert.

The limitations identified by Dr. Tarrand are supported by Dr. Tarrand's opinion as to Le's depression, and the effect of his depression and his medications on his ability to work around dangerous machinery or do commercial driving. The ALJ's RFC determination did not take into account this aspect of Dr. Tarrand's opinion. In addition, the ALJ did not discuss why he disregarded these additional limitations identified by Dr. Tarrand. In this regard, the ALJ failed to properly evaluate Dr. Tarrand's opinion. 20 CFR § 404.1527(f). Thus, while the medical opinions in the record support the ALJ's determination that Le can perform limited light work, the medical opinions, particularly Dr. Tarrand's, do not support the ALJ's RFC determination that Le's ability to perform light work is limited only by his inability to carry out complex job instructions. Consequently, as a whole, the diagnosis and expert medical opinion factor weighs against the ALJ's decision.

### C. Subjective Evidence of Pain

The third element considered is the subjective evidence of pain, including the claimant's testimony and corroboration by family and friends. Not all pain is disabling, and the fact that a claimant cannot work without some pain or discomfort will not render him disabled. *Cook,* 750 F.2d at 395. The proper standard for evaluating pain is codified in the Social Security Disability Benefits Reform Act of 1984, 42 U.S.C. § 423. The statute provides that allegations of pain do not constitute conclusive evidence of disability. There must be objective medical evidence showing the existence of a physical or mental impairment which could reasonably be expected to cause the pain. Statements made by the individual or his physician as to the severity of the plaintiff's pain must be reasonably consistent with the objective medical evidence of the record. 42 U.S.C. § 423. "Pain constitutes a disabling condition under the SSA only when it is `constant, unremitting, and wholly unresponsive to therapeutic treatment.'" *Selders*, 914 F.2d at 618-19 (citing *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988)). Pain may also constitute a non-exertional impairment which can limit the range of jobs a claimant would otherwise be able to perform. *See Scott v. Shalala,* 30 F.3d 33, 35 (5th Cir. 1994). The Act requires this Court's findings to be deferential. The evaluation of evidence concerning subjective symptoms is a task particularly within the province of the ALJ, who has the opportunity to observe the claimant. *Hames,* 707 F.2d at 166.

Le testified at the administrative hearing that he has constant back pain, pain in his left knee, and problems with his left hand. (Tr. 20). Le also testified that he attempted to do light work in 2002, but was unable to do the work because of his constant back pain. (Tr. 20). Further, sitting and standing would exacerbate the pain. (Tr. 20). He stated that he can not squeeze or grip with his left hand, which often times makes him drop things. (Tr. 20). He also discussed his knee problems, side effects from medications, and his depression. (Tr. 20). Because of all these impairments, Le stated

that he was often tired and needed to take frequent naps, and he was limited in his ability to go places. (Tr. 20).

The ALJ found that Le's complaints and subjective symptoms were not entirely credible. In so doing, the ALJ wrote:

> The objective medical tests do not fully support the claimant's allegations. The claimant testified that he has a weak grip, however, in a consultative examination on February 4, 2003, the claimant's left hand had sensation intact with a grip of 50 pounds and a pinch of 10 pounds while the right hand had a grip of 100 pounds and a pinch of 19 pounds (Exhibit 7F, page 2). Moreover, while the claimant has a left hand problem, he was able to work with it in the past. The claimant has back pain following a compression fracture but it has healed with no evidence of any lumbar radiculopathy (Exhibit 7F, page 5).
>
> The state agency physicians found the claimant can do medium work (exhibit F). Also the state agency physicians found the claimant does not have a severe mental impairment (Exhibit 9F).
>
> Dr. Tarrand testified that the claimant has a depressive disorder (Exhibit 6F). She testified that the claimant retains the mental capacity to carry out detailed and simple instructions but not complex instructions. She stated the claimant would be moderately restricted in his ability to concentrate and his ability to deal with work stress. She stated that the claimant should not be around dangerous machinery or do commercial driving. Dr. Tarrand testified that there are no psychiatric treatment records.
>
> On April 16, 2001, the claimant was released to return to work on a light duty basis (Exhibit 3F, page 4).

(Tr. 21). Credibility determinations, such as that made by the ALJ in this case in connection with Le' subjective complaints of pain, are generally within the province of the ALJ to make. *See Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994) ("In sum, the ALJ 'is entitled to determine the credibility of medical experts as well as lay witnesses and weigh their opinions accordingly.'") (quoting *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985)), *cert. denied*, 514 U.S. 1120 (1995).

Because the record shows that the ALJ made and supported his credibility determination, and because the ALJ did not rely on any inappropriate factors in making his credibility determination, this factor also weighs in favor of the ALJ's decision.

**D. Education, Work History and Age**

The fourth element considered is the claimant's educational background, work history and present age. A claimant will be determined to be disabled only if the claimant's physical or mental impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423(d)(2)(a).

The record shows that Le was sixty years old on the date of the hearing before the ALJ. He had a high school education and some college in Vietnam, plus English as a second language and auto mechanic classes in the United States. He has past work experience as a diesel mechanic. (Tr. 19). Based on the ALJ's conclusion that Le had the residual functional capacity to perform a restricted range of light level of work activity, the ALJ questioned a vocational expert to determine whether Le could perform his past work as a diesel mechanic. The vocational expert testified that Le's past work was heavy and skilled. (Tr. 21). Because it was established that Le cannot perform his past work, the burden was on Social Security administration to show there are significant numbers of jobs in the national economy that Le can perform consistent with his residual functional capacity. The following questions and hypothetical were posed to the vocational expert:

> Q: Could you give me some jobs, representative jobs that [Le's] skills would transfer to?
>
> A: Yes, sir, there would be jobs such as electric motor assembler, battery assembler, and tune-up mechanic. These are all light semiskilled category except for tune-up mechanic is, is a skilled job.

* * *

>Q: Let's say we had an individual who's the same age as the claimant who is at least able to communicate in English. And limited to light work as described by the Commissioner. That is occasionally lift and carry 20 pounds, frequently lift and carry 10 pounds; stand and/or walk with normal breaks about six to eight hours in an eight hour day; sit with normal breaks about six hours in an eight hour day. Would that leave those jobs with transferrable skills you gave me?
>
>A: Yes, Your Honor.
>
>Q: Okay, on the other hand if the individual still is limited to light as I described here, but was unable to communicate in English, would that eliminate those jobs?
>
>A: No, sir.
>
>Q: Well, I guess – let me get back and add in here. We had Dr. Tarrand testify – add in if the individual is limited to – if I make a distinction between, lets see, complex, detailed, and simple instructions. I'm going to say the individual could perform detailed and simple, but not complex instructions. Does that leave those jobs with transferable skills?
>
>A: I believe so, your honor.

(Tr. 321; 322-323).

A vocational expert's testimony, based on a properly phrased hypothetical question, constitutes substantial evidence that a claimant can perform a particular job. *Bowling v. Shalala*, 36 F.3d 431, 436 (5th Cir. 1994). A hypothetical question is sufficient when it incorporates the impairments which the ALJ has recognized to be supported by the whole record. Beyond the hypothetical question posed by the ALJ, the ALJ must give the claimant the "opportunity to correct deficiencies in the ALJ's hypothetical questions (including additional disabilities not recognized by the ALJ's findings and disabilities recognized but omitted from the question)." *Bowling,* 36 F.3d at 436.

Here, the hypothetical question posed by the ALJ to the vocational expert incorporated all the impairments that were found by the ALJ. Absent from the hypothetical, because it was absent from the ALJ's RFC, was any limitation on Le's ability to work around dangerous machinery or engage in commercial driving. Given that the ALJ erred in failing to fully consider and/or articulate that he had considered all the work limitations about which Dr. Tarrand had opined, and because it cannot be determined, on this record, whether the ALJ properly rejected Dr. Tarrand's opinion regarding Le's ability to work around dangerous equipment or engage in commercial driving, it cannot be said that the hypothetical posed to the vocational expert was a proper one. Moreover, it cannot be said that the jobs identified by the vocational expert, and found by the ALJ as jobs that Le could perform, are jobs that would fall within all the limitations identified by Dr. Tarrand – namely, an inability to work around dangerous equipment or engage in commercial driving. Although none of the jobs identified by the ALJ – electric motor assembler, battery assembler and tune-up mechanic – involve commercial driving, the record contains no evidence from which it could be determined whether those jobs involve working around dangerous machinery.

Because the ALJ did not properly consider all the limitations opined about by the medical expert in this case, and because such limitations are inextricably intertwined with the evidence received from the vocational expert as to the jobs Le can perform, this factor also weighs against the ALJ's decision. While it may seem that these additional limitations testified to by the medical expert are insignificant to the ALJ's ultimate disability determination, in the absence of a clear consideration by the ALJ of the limitations identified by Dr. Tarrand, and a proper acceptance or rejection of each as a limitation on Le's work-related abilities, substantial evidence does not support the ALJ's decision that Le is not disabled because he can perform jobs such as electric motor assembler, battery assembler, or tune-up mechanic. As a result, this proceeding should be remanded

to the Commissioner for further proceedings, including a determination of whether Le is impaired in his ability to work around dangerous machinery or engage in commercial driving, and whether those limitations affect his ability to engage in substantial gainful activity.[3]

## VI.  Conclusion and Order

Because there is not substantial evidence on record to support the ALJ's conclusion that Le is not disabled because he can perform jobs such as an electric motor assembler, battery assembler, and tune-up mechanic, the Court

---

[3] Le also contends that the ALJ erred by not considering the testimony of the vocational expert when he was questioned by Le's attorney about Le's alleged left hand impairment:

> Q: All right.  Given the same hypothetical as one just described before, the claimant has a problem with the use of his left hand, so that there is an impairment in the use of the left hand insofar as gripping or grasping, as the claimant described, can't make a fist with his left hand and has in his daily life encountered jars slipping through his hand for example.  With that additional problem in the use of his left hand, would that prevent him from doing those jobs that you've described?
>
> A: What is his hand of dominance?
>
> Claimant: Left hand.
>
> A: Yes, I think under those circumstances it would preclude him doing those jobs.

(Tr. 326)

However, as indicated above, the ALJ properly determined that Le was not so limited in his left hand as was assumed in that addition to the hypothetical given to the vocational expert. Furthermore, although the ALJ did not make specific findings on this issue, the vocational expert went on to describe other employment options for an individual with a combination of all those impairments, including the left hand problem. Such options included being a carwash attendant, and garment sorter. (Tr. 326-327). Based on this testimony, even if the ALJ were to find Le's complaints regarding his left hand credible, the record shows that Le still would be able to engage in various substantial gainful activities despite his left hand problems.

ORDERS that Plaintiff's Motion for Summary Judgment (Document No. 11) is GRANTED, Defendant's Motion for Summary Judgment (Document No. 13) is DENIED, and the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion.

Signed at Houston, Texas, this 23rd day of February, 2007.

Frances H. Stacy
United States Magistrate Judge